**Hearing Date: July 23, 2019 at 10:00 a.m.**
**Objection Date: July 16, 2019 at 5:00 p.m.**

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
Robert A. Wolf, Esq.
Jill Makower, Esq.
rwolf@tarterkrinsky.com
jmakower@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

DONADIO & OLSON, INC.,

                         Debtor.
-------------------------------------------------------------x

Chapter 7

Case No.: 18-13915 (SMB)

**NOTICE OF CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) FOR APPROVAL OF COMPROMISE AGREEMENT AMONG (A) VIKRAM PARALKAR, (B) CHAPTER 7 TRUSTEE, (C) ROGERS, COLERIDGE & WHITE LTD AND (D) HARPERCOLLINS PUBLISHERS INDIA PRIVATE LIMITED**

      **PLEASE TAKE NOTICE** that, upon the motion dated June 25, 2019 (the "Motion") of Deborah J. Piazza, the Chapter 7 trustee (the "Trustee") of the above-captioned debtor Donadio & Olson, Inc. (the "Debtor"), by and through her undersigned counsel, Tarter Krinsky & Drogin LLP, the Trustee will move before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 on **July 23, 2019 at 10:00 a.m.** (the **"Hearing"**), or as soon thereafter as counsel can be heard, for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving the agreement dated May 23, 2019 (the "Compromise Agreement") among (a) Vikram Paralkar, (b) the Trustee, (c) Rogers, Coleridge &

White Ltd and (d) HarperCollins Publishers India Private Limited, a copy of which is annexed to the Motion as Exhibit "A".

**PLEASE TAKE FURTHER NOTICE,** that copies of the Motion and the Compromise Agreement may be obtained by contacting the Trustee's undersigned counsel by telephone or email.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the Motion or the Compromise Agreement shall be set forth in a writing describing the basis therefor, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, and shall be (i) filed with the United States Bankruptcy Court for the Southern District of New York (a) in accordance with General Order M-399, electronically, by registered users of the Bankruptcy Court's case filing system, or (b) in accordance with Local Bankruptcy Rules 5005-1 and 9004-1, submitted to the Clerk of the United States Bankruptcy Court for the Southern District of New York; (ii) in accordance with Local Bankruptcy Rule 9070-1, submitted in hard-copy form directly to the chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the Bankruptcy Court; and (iii) served upon: (a) Tarter Krinsky & Drogin LLP, counsel to Deborah J. Piazza, as Chapter 7 Trustee, 1350 Broadway, 11th Floor, New York, New York 10018 (Attn: Robert A. Wolf, Esq.); and (b) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, so that same is filed and received no later than **July 16, 2019 at 5:00 p.m.**

**PLEASE TAKE FURTHER NOTICE** that any party objecting to the relief requested by the Motion must appear at the Hearing. The Hearing may be adjourned, from time to time, by announcement in open Court without any further or other notice thereof.

Dated: New York, New York
June 25, 2019

                **TARTER KRINSKY & DROGIN LLP**
                *Counsel to Chapter 7 Trustee*

By: /s/ Jill Makower
     Robert A. Wolf, Esq.
     Jill Makower, Esq.
     1350 Broadway, 11th Floor
     New York, New York 10018
     (212) 216-8000
     rwolf@tarterkrinsky.com
     jmakower@tarterkrinsky.com

                                                **Hearing Date: July 23, 2019**
                                                **Hearing Time: 10:00 A.M.**

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
Robert A. Wolf, Esq.
Jill Makower, Esq.
rwolf@tarterkrinsky.com
jmakower@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

DONADIO & OLSON, INC.,

                                  Debtor.
------------------------------------------------------------x

Chapter 7

Case No.: 18-13915 (SMB)

**CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO FED. R. BANKR. P. 9019(a) FOR APPROVAL OF COMPROMISE AGREEMENT AMONG (A) VIKRAM PARALKAR, (B) CHAPTER 7 TRUSTEE, (C) ROGERS, COLERIDGE & WHITE LTD AND (D) HARPERCOLLINS PUBLISHERS INDIA PRIVATE LIMITED**

**TO:   THE HONORABLE STUART M. BERNSTEIN
         UNITED STATES BANKRUPTCY JUDGE**

      Deborah J. Piazza, the Chapter 7 trustee (the "Trustee") of Donadio & Olson, Inc., the Chapter 7 debtor herein (the "Debtor"), submits this motion (the "Motion") for approval, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of the compromise agreement dated as of March 23, 2019 (the "Compromise Agreement") executed by and among (i) Vikram Paralkar ("Author"), (ii) the Trustee, (iii) Rogers, Coleridge & White Ltd ("RCW") and HarperCollins Publishers India Private Limited ("Publishers"), annexed hereto as **Exhibit "A"**, and respectfully represents:

{Client/085225/1/01839430.DOCX;2 }

**JURISDICTION**

1.      This Court has subject matter jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

**FACTS**

**A.     General Background**

2.      On December 3, 2018 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

3.      Shortly thereafter, the Trustee was appointed as interim chapter 7 trustee of the Debtor, and subsequently became the permanent trustee.

4.      Prior to the Petition Date, the Debtor, which was founded in or about 1969, was a very reputable literary agency. The Debtor had contractual arrangements with publishers on behalf of Debtor's author clients (including such prominent authors as Mario Puzo, author of The Godfather, Chuck Palahniuk, author of Fight Club, and Joseph Heller, author of Catch-22) for publication of its clients' written works.

5.      Pursuant to many such contractual arrangements, the publishers would transmit to the Debtor royalty payments in connection with the authors' works, from which payments the Debtor would retain for itself its agreed upon commissions, and then remit the balance of the payments to its respective author clients.

6.      The Debtor's bankruptcy filing arises out of a years-long fraud perpetrated by the Debtor's long-time providers of bookkeeping services, Darin Webb ("Webb") and The Bookkeeping Company, Inc. d/b/a Sum Innovation a/k/a The Bookkeeping Company of New York

City a/k/a The Bookkeeping Center ("Sum Innovation"), which was discovered only in late March, 2018. In that fraudulent scheme, Webb and Sum Innovation stole in excess of $3.5 million from Debtor's bank accounts and took affirmative steps to cover up their fraud and prevent Debtor from discovering such theft. As a result of the fraudulent theft and conversion of its funds, the Debtor was no longer able to operate its literary agency business, became indebted to its author clients for net royalties due to them which Webb and Sum Innovation wrongfully stole and converted, and was compelled to commence this Chapter 7 bankruptcy case.[1]

7. The Trustee, on behalf of the Debtor's estate, is currently litigating an adversary proceeding in this Court relating to this fraud, seeking to avoid and recover fraudulent conveyances and recover compensatory and punitive damages, Adv. Pro. No. 19-01084 (SMB) (the "Adversary Proceeding").

B. **The April 2017 Agreement Between the Author and the Publishers**

8. Prior to the Petition Date, the Author and the Publishers entered into an agreement dated April 24, 2017 (the "April 2017 Agreement") pursuant to which the Author granted the Publishers the sole and exclusive right to produce, publish, sell and distribute the Author's works entitled "The Wounds of the Dead" and "The Afflictions" (collectively, the "Work") in English and all Indian languages in India and Indian Subcontinents. (A copy of the April 2017 Agreement is annexed hereto as **Exhibit "B"**.)

9. The Debtor, as the Author's literary agent, was entitled under the terms of the April 2017 Agreement to fifteen percent (15%) of the advances and royalties payable by the Publishers to the Author under the April 2017 Agreement (See April 2017 Agreement, §§ 20, 23).

---

[1] By reason of his fraudulent actions, Webb was charged in July 2018 in the United States District Court for the Southern District of New York with a one-count Information for wire fraud, to which he pleaded guilty and for which he was sentenced to a prison term of two (2) years.

10. On September 20, 2018, the Author and the Publishers entered into a First Addendum (the "Addendum") to the April 2017 Agreement, pursuant to which paragraph 23 of the April 2017 Agreement was amended to read as follows:

23. SUBSIDIARY RIGHTS

During the continuance of this Agreement the PUBLISHERS shall make best endeavors to negotiate the sale or lease of subsidiary rights in the Work and will pay to the AUTHOR, the following percentages of the sums received by them on the sale or lease of the rights set out below:

1. Reprint rights licensed to another publisher – 60%

2. Electronic book rights – 50%

3. Translation – 70%

4. Audio rights – 50%

5. Dramatization rights for film, television, stage and radio – 80%
(i.e. the non-exclusive right to dramatize of all or any part of the WORK for reproduction, exhibition, broadcast and/or transmission through the medium of television, film, non-theatric, stage, web, home video (including but not limited to video cassettes and DVDs) and radio.

6. Non-Commercial rights for the disabled – Free of Charge
(i.e. the right to convert the WORK to Braille or to record or print the WORK for the sole use of the blind and handicapped gratis)

All royalties mentioned above are to be divided in the ratio of 85% to the AUTHOR and 15% to Agent.

(the "Amended Paragraph 23"). All subsidiary rights set forth in the Amended Paragraph 23 are hereinafter referred to as the "Addendum Subsidiary Rights"). (A copy of the Addendum is annexed hereto as **Exhibit "C"**.)

11. Pursuant to Amended Paragraph 23, all royalties due the Author from the Publishers with respect to the sale or lease of any Addendum Subsidiary Rights were to be divided

in the ratio of 85% to Author and 15% to the Debtor as the Author's literary agent (the "15% Commissions").

12.     By virtue of its filing of its bankruptcy petition, as of December 3, 2018, the Debtor could no longer perform the functions of literary agent for the Author; accordingly, the Author has selected RCW to serve as his literary agent.

13.     The Trustee was subsequently contacted by Matthew Turner, a literary agent at RCW, concerning his current representation of the Author. As a result of all of the foregoing, the Trustee and RCW have come to a compromise whereby they will evenly split the 15% Commissions with respect to royalties due the Author in connection with the sale or lease of any Addendum Subsidiary Rights. The compromise is set forth in the Compromise Agreement, and the Trustee, RCW, the Publishers and the Author are all parties to the Compromise Agreement.

**C.     The Compromise Agreement**

14.     The salient terms of the Compromise Agreement are as follows:

- The 15% Commissions with respect to royalties due Author in connection with the sale or lease of any Addendum Subsidiary Rights shall be split 7.5% to RCW and 7.5% to the Trustee on behalf of the bankruptcy estate of Donadio (the "Trustee 7.5% Commissions").

- The Trustee 7.5% Commissions shall be paid by Publishers at the same time Author's 85% share of royalties earned from the sale or lease of any Addendum Subsidiary Rights are paid by Publishers in accordance with the terms of the April 2017 Agreement as amended by the Addendum.

- The Trustee 7.5% Commissions shall be paid by Publishers via wire transfer. Concurrently with each of said payments by wire transfer, Publishers shall send via email to dpiazza@tarterkrinsky.com a statement setting forth the calculation of the particular 7.5% Commission(s) being paid.

- The Author's share of royalties shall be paid to him directly via wire transfer to an Indian bank account, in accordance with the terms of the April 2017 Agreement. RCW shall be paid their commission by the Publishers via wire transfer, and concurrently the Publishers shall

      send via email a statement setting forth the calculation of the particular 7.5% Commission(s) being paid.

15.     The Trustee believes the Compromise Agreement is fair and reasonable, and in the best interest of the Debtor's estate.

## REQUEST FOR RELIEF

16.     By this Motion, the Trustee seeks approval of the Compromise Agreement pursuant to Bankruptcy Rule 9019(a).

## THE COMPROMISE AGREEMENT SHOULD BE APPROVED

17.     Bankruptcy Rule 9019(a) grants the bankruptcy court authority to approve compromises and settlements of legitimate disputes in bankruptcy cases. In re Drexel Burnham Lambert Group, 140 B.R. 347, 349 (S.D.N.Y. 1992); In re WorldCom, Inc., 347 B.R. 123, 136-137 (Bankr. S.D.N.Y. 2006). Bankruptcy Rule 9019(a) provides, in pertinent part, that "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

18.     Bankruptcy Code section 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title...

11 U.S.C. § 105(a).

19.     The decision to approve a compromise or settlement lies within the discretion of the bankruptcy court. Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618 (S.D.N.Y. 1997); In re Prudential Lines, Inc., 170 B.R. 222, 246 (S.D.N.Y. 1994), citing In re Texaco, Inc., 84 B.R. 893 (Bankr. S.D.N.Y.), appeal dismissed, 92 B.R. 38 (S.D.N.Y. 1988); WorldCom, 347 B.R. at 136-137.

20.     A court must determine that a compromise or settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve the compromise

or settlement. In re MF Global, Inc., 2013 Bankr. LEXIS 427 at *12 (Bankr. S.D.N.Y. Jan. 31, 2013); In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968)). See also In re Lehman Bros. Holdings, 435 B.R. 122, 134 (S.D.N.Y. 2010); Cousins v. Pereira (In re Cousins), No. 09 Civ. 1190(RJS), 2010 U.S. Dist. LEXIS 136139, 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010); In re Chemtura Corp., 439 B.R. 561, 593-94 (Bankr. S.D.N.Y. 2010).

21.     Courts have developed standards to evaluate if a compromise or settlement is fair and equitable, and, to that end, courts in this Circuit have set forth factors for approval of compromises and settlements based on the original framework announced in TMT Trailer Ferry, 390 U.S. 414, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968). See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. N.Y. 2007)(citing TMT Trailer Ferry). See also 10 Collier on Bankruptcy P 9019.02 (15th ed. rev.)  Those interrelated factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." Motorola, 478 F.3d at 462, citing WorldCom, 347 B.R. at 137 (Bankr.

S.D.N.Y. 2006).

22. It is not necessary for the bankruptcy court to conduct a "mini trial" on the issue. Worldcom, 347 B.R. at 137; Drexel Burnham Lambert, 140 B.R. at 349. The Court need only "canvass the issues" to determine if the "settlement falls below the lowest point in the range of reasonableness." In re Teltronics Serv., Inc., 762 F.2d 185, 189 (2d Cir. 1985); Worldcom, 347 B.R. at 137.

23. It is respectfully submitted that when this Court "canvasses" the issues surrounding the proposed compromise, it should conclude, as the Trustee has, that the Compromise Agreement does not "fall below the lowest point in the range of reasonableness". See Teltronics, 762 F.2d at 189.

**APPLICATION OF THE 9019 FACTORS TO THE COMPROMISE AGREEMENT**

24. As demonstrated below, the relevant factors weigh in favor of approval of the Compromise Agreement.

(1) The Balance Between Litigation's Possibility Of Success
    And The Future Benefits Of The Compromise

25. As set forth above, the Debtor, by virtue of its bankruptcy filing, has been unable to perform the functions of literary agent for the Author, and the Author has requested that RCW (who has been a literary agent for the Author since prior to the Petition Date and is now acting as the Author's primary agent) be involved in future negotiations between Publishers' film agent and film productions interested in the rights to the Work. The compromise is beneficial to the estate because it allows the estate to receive the 7.5% Commissions without the Debtor performing the functions of literary agent for the Author in future negotiations relating to the Work.

(2) The Likelihood of Complex And Protracted Litigation, With Its Attendant Expense, Inconvenience, And Delay, Including <u>The Difficulty In Collecting On The Judgment</u>

26. Absent a settlement or compromise regarding the estate's rights to amounts due under the April 17 Agreement and the Addendum, there could be costly litigation with its attendant expense, inconvenience and delay, particularly since those agreements are to be construed under the laws of India and the April 17 Agreement provides (in paragraph 33 thereof) that the Courts at New Delhi India have exclusive jurisdiction over any dispute arising out of such agreement.

(3) <u>The Paramount Interests of The Creditors</u>

27. The paramount interest of creditors is served by the Compromise Agreement. It is desirable and beneficial to creditors that the issues resolved in the Compromise Agreement be fully and finally compromised in the manner and upon the terms and conditions set forth therein.

(4) <u>Whether Other Parties In Interest Support The Settlement</u>

28. The Trustee does not anticipate any opposition to the Compromise Agreement from any parties in interest.

(5) <u>The "Competency and Experience of Counsel" Supporting the Settlement</u>

29. This factor militates in favor of approval of the Compromise Agreement. The Compromise Agreement was reached after discussions among Matthew Turner (the Author's literary agent at RCW), and experienced counsel for the Trustee (Tarter Krinsky & Drogin, LLP) and the Publishers (in house counsel in India).

(6) The Nature And Breadth of Releases To Be Obtained by <u>Officers and Directors</u>

30. The Compromise Agreement does not provide for any releases of officers or directors.

(7)  The Extent To Which The Settlement Is The Product of
     Arm's Length Bargaining

31.  The Compromise Agreement is the product of arm's length bargaining among RCW, counsel to the Trustee and counsel to Publishers.

32.  Based on the foregoing, it is clear that the relevant factors weigh in favor of approval of the Compromise Agreement. The Trustee believes that the terms of the Compromise Agreement are fair and reasonable and in the best interests of the Debtor's estate.

### NOTICE

33.  All creditors will be served with notice of this Motion, as required by Bankruptcy Rule 2002. The Trustee submits that no other or further notice is required.

### NO PRIOR MOTION

34.  No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

### CONCLUSION

35.  The Trustee respectfully requests that the Court approve the Compromise Agreement annexed hereto as **Exhibit "A"**, and that the Court grant such other and further relief as to this Court appears just and proper.

Dated:  New York, New York
        June 25, 2019

**TARTER KRINSKY & DROGIN LLP**
*Counsel to Deborah J. Piazza, as Chapter 7 Trustee*

By: /s/ Jill Makower
    Robert A. Wolf, Esq.
    Jill Makower, Esq.
    1350 Broadway, 11th Floor
    New York, New York 10018
    Telephone: (212) 216-8000
    rwolf@tarterkrinsky.com
    jmakower@tarterkrinsky.com