**EXHIBIT B**

HarperCollins *Publishers* India

*News Corp*

# AGREEMENT

This AGREEMENT is entered into on **Twenty Fourth** day of **April, 2017** by and between

**Vikram Paralkar**
c/o Donadio & Olson, Inc.
40 West 27th Street, 5th floor
New York, NY 10001
USA
Phone: 212-691-8077
E mail: neil@donadio.com

(hereinafter referred to as 'the AUTHOR'), which term shall be deemed to include the AUTHOR's executor, devisees, heirs, and literary assigns of the FIRST PART;

AND

**M/s HarperCollins Publishers India Private Limited**, a company incorporated under the Companies Act, 1956 having its registered office at 18/19, Old Rajendra Nagar, New Delhi 110060, India, (hereinafter referred to as 'PUBLISHERS'), which expression shall, unless repugnant to the context thereof, be deemed to include its successors and permitted assigns, of the SECOND PART;

AUTHOR and PUBLISHERS are individually referred to as party and jointly as Parties.

**WITNESSTH:**

Whereas the AUTHOR desires the PUBLISHERS to publish their WORKS entitled *"The Wounds of the Dead"* and *"The Afflictions"* (hereinafter individually referred as WORK 1 and WORK 2 respectively and collectively referred to as 'WORK'), and the PUBLISHERS desire to publish the WORK.

Now, therefore, in consideration of the mutual consent and understandings herein stated, the parties hereby agree as follows:

**1. GRANT OF RIGHTS**

The AUTHOR grants to the PUBLISHERS the sole and exclusive right to produce, publish, sell and distribute the WORK and/or to license the production, publication, sale and distribution of the WORK in English and all Indian languages in all media, forms and formats whether now known or hereinafter invented (including without limitation in print, audio and electronic form) and in the other subsidiary rights specified in this Agreement in all territories throughout India and Indian Subcontinents for the full term of copyright including any extensions, renewals or revivals thereof.

*VP*

## 2. PUBLICATION

Subject to the terms of this Agreement, the PUBLISHERS shall publish the WORK at their expense, no later than 18 months after delivery and acceptance of the WORK in accordance with Clauses 4 and 5 unless prevented by circumstances beyond their control. If the PUBLISHERS do not publish the WORK within the time specified in this Agreement for reasons other than first serial use or because of delays of the AUTHOR in returning the copy edited manuscript or proofs, or the AUTHOR's failure to comply with requests made by the PUBLISHERS' legal advisers or delays caused by circumstances beyond the PUBLISHERS' control, the AUTHOR may write to the PUBLISHERS demanding publication. The PUBLISHERS shall within 90 days of the PUBLISHERS' receipt of such written demand either publish the WORK or revert to the AUTHOR in writing all rights to the WORK granted to the PUBLISHERS in this Agreement, subject to any outstanding licences, which shall be assigned to the AUTHOR. In the event that the AUTHOR terminates this Agreement under this Clause, the AUTHOR shall be entitled to retain any advance payments made under this Agreement prior to such termination and such sums shall be treated as agreed damages for the PUBLISHERS' failure to perform their obligations under this Agreement.

## 3. COPYRIGHT AND MORAL RIGHTS

(a) The PUBLISHERS undertake that the AUTHOR's name will appear prominently on the title page, cover and binding of all copies of the WORK and will ensure that all copies of the WORK display a notice of copyright ownership reasonably prominently and in the following form:

© Vikram Paralkar, year of first publication

(b) The AUTHOR hereby asserts his/ her moral right to be identified as the author of the work. The PUBLISHERS undertake to observe and print such assertion and to impose the same condition on their licensees.

## 4. DELIVERY

The AUTHOR has already delivered the WORK 1 and WORK 2 of approximately 50,000 words each.

## 5. ACCEPTANCE OF TYPESCRIPT

(a) The PUBLISHERS shall notify the AUTHOR that the WORK is acceptable to the PUBLISHERS in content and form and that the AUTHOR has complied with Clauses (permissions / illustrations / any other obligations relating to delivery) in a manner satisfactory to the PUBLISHERS. The PUBLISHERS shall accept the WORK for publication provided it conforms in style, content and quality to the PUBLISHERS' expectations, meet the specifications set out in the synopsis or letter in which the AUTHOR described the AUTHOR's intentions and as a result of which the WORK was commissioned, and fulfil any other representations by or on the behalf of the AUTHOR (if any) and the standard of any previously published WORK of the AUTHOR, if appropriate.

(b) If the WORK fails to meet these expectations, the PUBLISHERS shall notify the AUTHOR without delay and make clear in writing within six weeks why the WORK is not acceptable and what amendments are necessary to make them acceptable to the PUBLISHERS.

(c) If the PUBLISHERS reject the amended WORK and terminate this Agreement, they shall notify the AUTHOR in writing of their decision within 30 working days of the delivery of the amended WORK. This notification shall set out the PUBLISHERS' reasons in full for rejecting the WORK and for the recovery of any or all the advances paid by them.

(d) The PUBLISHERS may further request the AUTHOR to change or remove from the WORK anything which, in the view of the PUBLISHERS' legal advisers, is objectionable or likely to be actionable at law. If the AUTHOR fails to alter or amend the WORK as requested, the PUBLISHERS reserve the right to terminate this Agreement, upon which the AUTHOR shall if the PUBLISHERS so request return any or all of the advances paid.



(e) The title shall comprise the book to be written by the AUTHOR, and the AUTHOR shall not offer rights to another book to another publisher, nor accept an offer for another book from another publisher in same territory and languages as agreed in clause no 1 until complete manuscript of *"The Wounds of the Dead"* and *"The Afflictions"* has been delivered to the PUBLISHERS and the AUTHOR has complied with the option provisions of Clause 17. This provision shall apply to books co-authored by the AUTHOR as well as to books written solely by the AUTHOR.

6. **PERMISSIONS ILLUSTRATIONS AND INDEX**

(a) It shall be the AUTHOR's responsibility to obtain all necessary permissions to reproduce (i) written material in which copyright is not the property of the AUTHOR, and (ii) any photographs, maps or other illustrative material. Such permissions should be obtained at no cost to the PUBLISHERS unless agreed otherwise in advance and should cover all uses of the material in any version of the WORK covered by this Agreement.

(b) The PUBLISHERS will consult the AUTHOR as to whether the WORK should have an index, bibliography, or any other similar additional material.

7. **PROOFS**

The PUBLISHERS will deliver one set (or two if requested) of printers' proofs of the WORK to the AUTHOR and the AUTHOR will correct and return them to the PUBLISHERS within 14 days except where otherwise agreed, failing which the Publisher may consider the WORK as passed by the Author. If the cost of the AUTHOR's changes or corrections excluding printing, typesetting or PUBLISHERS' errors amounts to more than 10% of the original cost of composition any cost over this will be met by the AUTHOR.

8. **WARRANTY AND INDEMNITY**

(a) The AUTHOR warrants and represents to the PUBLISHERS that:

(i) the WORK will be wholly original and will be written and compiled in its entirety by the AUTHOR with the exception of any quoted material,

(ii) the AUTHOR has full power to enter into this Agreement,

(iii) the WORK has not previously been published or distributed in any of the forms in the exclusive territories covered by this Agreement,

(iv) the WORK does not infringe any existing copyright or licence of any third party,

(v) the WORK contains nothing libellous, obscene or otherwise unlawful, and that it does not breach any confidence or invade the privacy of any person, nor does it breach the Official Secrets Act or similar legislation,

(vi) all statements in the WORK purporting to be factual are true and based upon reasonable research for accuracy, and that no recipes or instructions, if followed accurately, will cause damage or injury to the user or to third parties,

(vii) the AUTHOR will not offer any book to another publisher or enter into any publishing contract in the exclusive territories covered by this Agreement prior to publication of *"The Wounds of the Dead"* and *"The Afflictions"* which would in the PUBLISHERS' opinion prejudice or damage sales of the title.



(b) The AUTHOR will indemnify the PUBLISHERS against all losses, damages, interest costs or expenses incurred by them as a result of any breach or alleged breach by the AUTHOR of any of the above warranties and the PUBLISHERS will immediately notify the AUTHOR of any claim from third parties which affects the AUTHOR's warranty and will not compromise or settle any claim without the AUTHOR's consent which will not be unreasonably withheld.

(c) If the WORK is altered, amended or removed under Clause 5(d) above, such alteration, amendment or removal shall not affect the warranties and indemnity herein.

(d) The AUTHOR agrees that all the warranties and indemnities given in this Clause shall survive the termination of this Agreement.

## 9. PRODUCTION, PROMOTION AND SALE OF THE WORK

(a) The PUBLISHERS will bear all expenses in relation to the publication and marketing of the WORK, subject to the terms of this Agreement. The PUBLISHERS shall meet all practicable and reasonable requests from the AUTHOR for information about the publication of the WORK including printing quantities, consultation on cover and/or jacket design and on copy and the PUBLISHERS will take into consideration the AUTHOR's views although the PUBLISHERS' decision shall be final in all aspects of the production and marketing of the WORK.

(b) The PUBLISHERS may use a reasonable proportion of the WORK for promotion on the Internet or otherwise and the AUTHOR shall also provide full support in publicizing the book via his/her website and social media platforms.

(c) The PUBLISHERS shall be entitled to place the PUBLISHERS' website address inside the WORK and on the back cover of the WORK.

## 10. COMPLIMENTARY COPIES AND AUTHOR'S PURCHASES

On publication the PUBLISHERS will send to the AUTHOR c/o the agent 12 hardback and 20 paperback complimentary copies of the WORK (including agent's copies) published by them under this Agreement. The AUTHOR may buy further copies of such editions (excluding any sublicensed editions) at the standard discount of 40% on the MRP for personal use and not for resale. The PUBLISHERS may deduct the cost of copies bought by the AUTHOR from any sums due to the AUTHOR under this Agreement or under any other agreement which exists between the Parties. Alternatively, the PUBLISHERS may present the AUTHOR with a pro-forma invoice for payment for such copies.

## 11. COPYRIGHT LICENSING AGENCY

The WORK shall be included in the scheme administered by the Copyright Licensing Agency for the licensing of photocopying or other forms of reprography. The proceeds from licensed copying of the WORK, or portions of the WORK, will be divided equally between the AUTHOR and the PUBLISHERS. The AUTHOR's share of these proceeds will be paid through the agency of the AUTHOR's Licensing and Collecting Society in accordance with the applicable standard terms and conditions.

## 12. ACCOUNTS

(a) The PUBLISHERS will make up accounts of the sales of the WORK including details received of all sub-licensed editions to the 31st March and the 30th September each year while this Agreement is in force. The first accounting period will be from the date of first publication to the end of the following March or September, whichever comes first. Accounts will be delivered and settled three months after the closing date of each accounting period, and the PUBLISHERS shall pay any monies due to the AUTHOR by wire transfer to their or their agent's nominated bank account. In case of a non-resident AUTHOR, if amount due to such AUTHOR in any accounting period amounts to less than Ten Thousand Rupees, the PUBLISHER reserves the right to withhold such amount from payment to the AUTHOR and carry forward such amount to the next accounting period.



(b) Notwithstanding the provisions of clause 12(a) the AUTHOR's share of income from any sub-licence will be paid if requested within 30 days of receipt by the PUBLISHERS provided the advance paid under Clause 21 has been earned.

(c) The PUBLISHERS may at their discretion set aside from the royalties earned in the first accounting period a reserve against returns of not more than 20% for hardback editions and 20% for paperback editions unless market conditions dictate otherwise. Any such reserve will be released and accounted for on the next royalty statement.

(d) The AUTHOR may at his/her sole expense audit the books and records in relation to his / her work verified by any certified accountancy firm acceptable to the PUBLISHERS at their registered office during normal business hours, or may authorise others to do so, in so far as they relate to receipts from sales of the WORKS. If such audit finds errors to the AUTHOR's disadvantage in addition to rectifying the error immediately the PUBLISHERS will contribute to the cost of the audit an amount equal to such error, but in no event more than the cost of the audit. The AUTHOR agrees to give reasonable written notice of any intention to carry out such an inspection. Such audit will be conducted upon at least 30 days prior written notice to PUBLISHERS. In no event shall the AUTHOR exercise audit rights more than once in any calendar year. Any information acquired during the course of any audit will be and remain PUBLISHER'S Confidential Information and will not be disclosed to any third party, except as required by law or in connection with any proceeding in a court of competent jurisdiction.

(e) All payments made under this agreement would be subject to withholding of tax at source, (TDS to be deducted in AUTHOR's PAN : ALQPP6616C) at the rates prevailing in force on the date of payment.

## 13. REMAINDER SALES

The PUBLISHERS may at their discretion dispose of the residue of any edition of the WORK not less than one year from the date of first publication of that edition at a remainder price which will not be subject to royalties but when sold above cost the AUTHOR shall be entitled to 10% of the net proceeds of the copies sold. In either event the PUBLISHERS will use their best endeavours to notify the AUTHOR who will have the option for a period of 14 days from the date of such notice to purchase such copies at remainder price.

## 14. REVERSION

If the WORK goes out of print, so that it is not available in any of the PUBLISHERS' trade editions covered by this Agreement, and if the PUBLISHERS decline or neglect other than through circumstances beyond their control to arrange within 6 months (or 9 months in the case of an extensively illustrated WORK) of a written request from the AUTHOR for the reissue of the WORK, this Agreement shall automatically terminate, provided the AUTHOR is not indebted to the PUBLISHERS for any sum owing to them under this Agreement, such indebtedness not including any unearned balance of an advance paid to the AUTHOR herein. On termination, all rights granted to the PUBLISHERS under this Agreement (except the rights arising from the AUTHOR's undertaking in Clauses 8 and 17) revert to the AUTHOR.

## 15. INFRINGEMENT

(a) If the PUBLISHERS decide that any exclusive rights granted to them in the WORK have been infringed by a third party, the AUTHOR will be given 14 days' notice that legal action is needed to protect these rights and that such action may be taken in the joint names of the PUBLISHERS and the AUTHOR.

(b) If the AUTHOR agrees to be joined as a party, all costs and all monies arising from the action will be shared equally, or in such proportions as the parties shall agree. If the AUTHOR fails to agree to be joined, the PUBLISHERS shall be entitled to take proceedings in the joint names of the PUBLISHERS and the AUTHOR upon providing the AUTHOR



with a reasonable indemnity against costs and in this event all costs and receipts will fall to the PUBLISHERS alone.

(c) Notwithstanding 15 (a) and (b) above, if the PUBLISHERS consider it necessary to protect their own or the AUTHOR's rights in the WORK, they and their licensees may take urgent proceedings in their sole name and the PUBLISHERS shall inform the AUTHOR of such action as soon as it is practicable, and invite the AUTHOR to join with them as a party in the action as provided above.

### 16. TERMINATION

(a) Without prejudice to Clauses 4 and 5 above, if either party fails to comply with any of the terms of this Agreement, and fails within 3 months of being requested to do so to remedy a breach capable of being remedied, the other party may terminate this Agreement by summary notice in writing.

(b) Upon termination of this Agreement under any circumstances, all rights in the WORK granted to the PUBLISHERS shall automatically revert to the AUTHOR. Termination of the Agreement shall not affect:

  (i) payment of any sums due from either party to the other,

  (ii) any advances to be repaid to the PUBLISHERS by the AUTHOR,

  (iii) any rights of the PUBLISHERS or their licensees under other agreements concerning the WORK which have been properly entered into, but which the PUBLISHERS shall not have the right to extend or renew.

(c) In the event of the insolvency or liquidation of the PUBLISHERS through any cause whatsoever, or if a receiver or manager of the PUBLISHERS' business is appointed, other than for the purpose of reconstruction, all rights herein granted shall revert to the AUTHOR who shall for 90 days thereafter have the option of buying any remaining copies of the WORK bound or unbound at the fair market value thereof, this value to be determined by agreement.

### 17. NEXT WORK

(a) The AUTHOR agrees to give the PUBLISHERS the first option to consider for publication the AUTHOR's next work of fiction/non-fiction in the exclusive territories covered by this Agreement on terms to be mutually agreed such terms to be fair and reasonable.

(b) Within 3 weeks of receipt of a reasonably detailed synopsis or within 6 weeks of receipt of the next work, the PUBLISHERS shall inform the AUTHOR whether or not they wish to publish it.

### 18. COMPETING WORK

During the continuance of this Agreement, the AUTHOR agrees not to write or contribute to any work that is an expansion, abridgement or revisions of the WORK on the same subject/theme, which would in PUBLISHERS' opinion be liable to affect adversely sales of the WORK, without the prior consent of the PUBLISHERS.

### 19. ADVERTISEMENTS

The PUBLISHERS will not insert within the WORK or on the cover or the jacket any advertisements without the AUTHOR's consent and will use their best endeavours to include a similar provision in all sub-licences.

VP

### 20. AUTHOR'S AGENT

All sums of money due under this agreement shall be paid to and in the name of the Author's agent, Donadio & Olson, Inc., (Attn: Neil Olson) 40 West 27th Street, 5th floor, New York, NY 10001, whose receipt shall be a good and valid discharge of all such indebtedness. Donadio & Olson, Inc. is hereby empowered to act in all matters arising from and pertaining to the Agreement, said agency being coupled with an interest. The Author does hereby irrevocably assign and transfer to Donadio & Olson, Inc. a sum equal to fifteen percent (15%) of all monies due and payable to and for the account of Author, his heirs, executors, administrators, successors, and assigns under this Agreement.

| | | |
|---|---|---|
| Beneficiary name | : | Donadio & Olson, Inc. - Author Account |
| Bank account no | : | 781368597 |
| Bank name | : | JP Morgan Chase Bank |
| Branch | : | 225 5th Avenue, New York, NY 10010 |
| Routing Number | : | 021000021 |
| IBAN # | : | 01021000021781368597 |
| Swift Code | : | CHASUS33 |

Permanent Account No. (PAN): ALQPP6616C (Vikram Paralkar)

### 21. ADVANCE

The PUBLISHERS will pay an advance on account of all sums which may become payable under this Agreement of **Rs. 3,50,000 (Rupees : Three Lakhs Fifty Thousand )** payable as to:

All advances mentioned here under are to be divided in ratio of 85% to Author and 15% to Agent

**Rs. 2,50,000 (Rupees: Two Lakhs Fifty Thousand)** on signature of this Agreement by both parties

**Rs. 50,000 (Rupees: Fifty Thousand Only)** on first publication of the PUBLISHERS' edition of the Work 1

**Rs. 50,000 (Rupees: Fifty Thousand Only)** on first publication of the PUBLISHERS' edition of the Work 2

### 22. ROYALTIES

The PUBLISHERS will pay to the AUTHOR a royalty on sales of the WORK as follows (the 'Home Market' shall be defined as India):

All royalties mentioned here under are to be divided in ratio of 85% to Author and 15% to Agent

(a) On the edition sold in the Home Market a royalty calculated on the MRP of 10% on hardcover and paperback

(b) On the edition sold overseas or in the Home Market for purposes of export a royalty calculated on the net receipts of: 10% on hardcover and paperback

(c) 10% of the publisher's net receipts, if for special reasons, such as supply in bulk, or for a particular deal, the WORK is sold at a discount of over 52.5% of the cover.



(d) Special Sales

On copies sold as cheaper editions premium offers or other special sales, a royalty calculated on the price received of 5% on sales.

(e) PUBLISHERS' Own Electronic Book Exploitation

Use by the PUBLISHERS of the WORK in electronic book form a royalty of 25% of the sums received by the PUBLISHERS from its customers, distributors and agents less any commissions or sales tax due on such sales. Electronic Book shall mean a digital version of part of or substantially the entire text of the WORK that bears the imprint of the PUBLISHERS, and that, in exchange for a payment from end users, is made accessible to end users on a controlled basis. An Electronic Book may contain devices to facilitate reading and use of the text, such as synched audio edition and/or hyperlinks.

(f) General Proviso

No royalties shall be paid on copies of the WORK which are sold at cost or less, presented to the AUTHOR, used to promote the sale of the WORK, lost through theft, or damaged or destroyed by fire, water, in transit or otherwise.

## 23. SUBSIDIARY RIGHTS

During the continuance of this Agreement, The PUBLISHERS will pay to the AUTHOR, the following percentages of the sums received by them on the sale or lease of the rights as set out below:

All royalties mentioned here under are to be divided in ratio of 85% to Author and 15% to Agent

    (a)    Reprint rights licensed to another publisher – 60%

    (b)    Electronic book rights – 50%

    (c)    Translation – 70%

    (d)    Audio rights – 50%

Gratis for non-commercial use of right to convert the WORK to Braille or to record or print the WORK for the sole use of the visually impaired and or by the disabled, and for any other right in the Work not already provided for in this Agreement shall be divided equally between the AUTHOR and the PUBLISHER.

## 24. INTERPRETATION

(a) Throughout this Agreement, reference to either party shall be deemed to include the heirs, successors in business, personal representatives or permitted assigns of either party, as the case may be.

(b) The AUTHOR shall be intimated in advance about any proposal to transfer the rights and licences in the WORK from one imprint of the PUBLISHERS to another.

(c) The rights and licences granted in this Agreement may be assigned or transferred by the PUBLISHERS to any third party who acquires all or any significant portion of the business or imprint of the PUBLISHERS, provided the assignee assumes all of the PUBLISHERS' obligations under this Agreement.

(d) The headings used throughout this Agreement are for convenience only and shall not affect its interpretation.

*VP*

## 25. FORCE MAJEURE

If the performance of duties and obligations by the Parties under this Agreement is prevented, delayed, restricted or interfered with by or due to any act of God including but not limited to fire, flood, war, governmental directions or orders by civil or military authority, terrorism, enactment or amendment of any law or rules and regulations made effective whether by State or Central Government or by any regulatory authority, which are beyond the reasonable control of such Party
and not of its own making and amounting to force majeure, such Party, upon promptly giving written notice of such force majeure event to the other Party, by any mode of recorded delivery, shall be excused from such performance to the extent of such prevention, delay, restriction or interference, provided that the non performing Party shall use all reasonable effort to prevent, avoid, remedy, and or remove the cause for such non-performance and shall continue performance hereunder once force majeure ceases.

## 26. CODE OF CONDUCT

(a) The parties will conduct all its dealings with the highest business standards.

(b) Either parties shall not engage during the term of this agreement, either directly or indirectly, in any fraudulent, corrupt practices, illegal actions or any other activity that is incompatible with the proper discharge of this contract and that a breach of this clause is a material breach of the Agreement.

## 27. CONFIDENTIALITY

Parties to this Agreement hereby agree and accept for their agents, employees and other representatives or related parties to maintain confidentiality and agree to (a) protect other party information that is identified as confidential or that reasonably should be considered confidential; (b) preserve information relating to the current contract, pending or future contracts, including, but not limited to, payments and fees, commissions or any other business terms/material information and shall use this information only to fulfil its obligations under this Agreement; and (c) return this information to other party promptly when this Agreement terminates.
   The parties agree that the business terms of this Agreement are confidential in nature and that information relating to the business terms or conditions of this Agreement shall not be revealed or made available to public. Either party agree that the existence of the relationship is not confidential; however, neither party may make a public disclosure of details of the relationship without first obtaining the other party's written approval regarding the content of the disclosure, which approval may be given at the discretion of the other party. Breach of this clause shall be construed as a material breach of this agreement

## 28. PRIVITY OF CONTRACT

Nothing in this Agreement is intended to confer on any third party any benefit or any right to enforce any term contained in this Agreement.

## 29. NOMINATION

In the event of the death of the AUTHOR within the period of the validity of this Agreement, the AUTHOR nominates his/her nominee as mentioned in enclosed Annexure I.

## 30. NOTICES

(a) All notices, requests, consents and other communication under this Agreement ("Notices") shall be sent in writing at the addresses of the parties hereinafter recited by (i) Registered Mail, (ii) Personal delivery to the respective Parties at the address set forth in the Agreement. Any Notice given in accordance with point (i) above, shall be deemed to have been delivered within three (3) days after having been mailed.

PUBLISHERS
Address: A-75, Sector-57, Noida-201301



AUTHOR
Address: Donadio & Olson, Inc., 40 West 27th Street, 5th floor, New York, NY 10001
USA

(b) AUTHOR shall notify changes in his/her communication address to the PUBLISHERS.

### 31. AMENDMENTS

No amendment of, addition to or modification of this Agreement shall be effective unless reduced to writing and signed by the parties hereto.

### 32. ARBITRATION

Any dispute, controversy or claim arising out of, or in connection with this agreement, or the breach, invalidity or termination thereof shall be referred to arbitration and resolved by the sole arbitrator to be appointed mutually by the AUTHOR and the PUBLISHERS as per the provisions of the Arbitration and Conciliation Act, 1996, including any and all amendments thereto from time to time. The seat or legal place of arbitration shall be New Delhi, India; and arbitration proceedings shall take place in New Delhi. The arbitration proceedings shall be conducted in the English language. The sole Arbitrator must state reasons for the decision in writing. The arbitral award shall be final, binding and enforceable against the parties, and judgment thereon may be entered in any court of competent jurisdiction.

### 33. GOVERNING LAW

The provisions of this Agreement shall be governed by the laws of India and the Courts at New Delhi shall have exclusive jurisdiction over any dispute arising out of this Agreement.

### 34. ENTIRE AGREEMENT

This Agreement sets forth the entire agreement of the parties, and replaces and supersedes any previous agreement between the parties on the subject, whether oral or written, express or implied.

**IN WITNESS WHEREOF THE PARTIES HERETO HAVE EXECUTED THEIR RESPECTIVE HANDS AND SEALS ON THE DAY MONTH AND YEAR FIRST ABOVE WRITTEN.**

Signed & Delivered by the within named
'THE AUTHOR'

*[signature]*
VIKRAM PARALKAR

WITNESSES
1. *[signature]* Vincent Poplaski
2. *[signature]* Arturo Zinny

Signed & Delivered by the within named
'THE PUBLISHERS' HarperCollins Publishers India Private Ltd, through authorised signatory

*[signature]*

WITNESSES
1.
2.

## Annexure: I

**ROYALTY INFORMATION & NOMINATION DETAILS**

| | |
|---|---|
| **Author's Name :** | Vikram Paralkar |
| **Title** (working title) : | "The Wounds of the Dead" |
| | "The Afflictions" |
| **ISBN :** | TBA |
| **Copyright :** | © Vikram Paralkar, year of first publication |
| **Contact details :** | c/o Donadio & Olson, Inc. |
| Permanent Address : | 40 West 27th Street, 5th floor |
| | New York, NY 10001 |
| | USA |
| Contact Address | As mentioned above |
| Telephone no/email-id/Fax | Phone: 212-691-8077 / neil@donadio.com |
| Royalty should be in the name of : | Donadio & Olson, Inc. |
| Send to : | Donadio & Olson, Inc. |
| **Bank details for wire transfer the payment** Bank name and address : | JP Morgan Chase Bank 225 5th Avenue New York, NY 10010 |
| A/C name: | JP Morgan Chase Bank |
| A/C number: | 781368597 |
| Routing Number : | 021000021 |
| IBAN #: | 01021000021781368597 |
| Swift Code: | CHASUS33 |
| PAN: | ALQPP6616C  - (Vikram Paralkar) |
| **Nationality** (Indian/Foreign) : | Indian |

**NOMINATION**

Nominee name :

Relation :

Address :

*VP*